# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARINA T.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-00815-MAA <br><br> **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

On February 3, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision terminating her disability insurance benefits, which she had been receiving pursuant to Title II of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

On September 20, 2010, the Commissioner found that Plaintiff was disabled beginning on May 14, 2008, due to conditions that required transplants of her heart and liver. (Administrative Record [AR] 17, 116-19.) The Commissioner found that Plaintiff's conditions medically equaled the requirements of Listings 4.02 (chronic heart failure), 4.05 (recurrent arrhythmias), and 4.06 (symptomatic congenital heart disease). (AR 118.)

On May 6, 2015, the Commissioner determined that Plaintiff was no longer disabled as of May 4, 2015. (AR 17, 120-23.) The Commissioner specifically found that since the liver and heart transplants, Plaintiff's condition had "improved significantly." (AR 120.) On reconsideration, a disability hearing officer upheld the decision. (AR 17, 157-67.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 169-70.) At a hearing held on August 9, 2017, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff, a medical expert, and a vocational expert. (AR 51-96.) In a decision issued on January 3, 2018, the ALJ found that Plaintiff disability had ended as of May 4, 2015. (AR 17-26.)

The ALJ applied the evaluation for medical improvement, as set out in 20 C.F.R. § 404.1594, to make the following findings. (AR 17.) Plaintiff had not engaged in substantial gainful activity. (AR 19.) Since May 4, 2015, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (*Id.*) Since May 4, 2015, there had been medical improvement. (AR 20.) The medical improvement was related to the ability to work, because, by May 4, 2015, Plaintiff no longer met or equaled the requirements of a listed impairment. (*Id.*) Since May 4, 2015, Plaintiff continued to have severe impairments consisting of congenital heart disease, status-post heart and liver transplant; and osteopenia. (AR 21.) Since May 4, 2015, she had a residual functional capacity ("RFC") for light work with additional limitations. (*Id.*) Based

on her RFC, Plaintiff could perform her past relevant work as a front office worker and administrative office manager, as actually and generally performed. (AR 25.) Thus, the ALJ concluded that Plaintiff's disability ended on May 4, 2015 and that she had not become disabled again since that date. (*Id.*)

On November 29, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-8.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

The parties raise the following disputed issues:

1. Whether the ALJ erred in determining the severe impairments;

2. Whether the ALJ erred in the evaluations of Plaintiff's symptoms and testimony; and

3. Whether the ALJ erred in the evaluation of the lay witness statements. (ECF No. 25, Parties' Joint Stipulation ["Joint Stip."] at 5.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is

susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**I.  Severe Impairments (Issue One).**

In Issue One, Plaintiff contends that the ALJ erred in failing to classify her bedsores or pressure ulcers ("bedsores") as a severe impairment. (Joint Stip. at 5-11, 15-17.) Although the ALJ did find that Plaintiff had other severe impairments relating to her heart condition and osteopenia (AR 21), the ALJ excluded bedsores from the disability analysis, after expressing doubt that the bedsores were a medically determinable impairment (AR 76).

**A.  Legal Standard.**

Plaintiff's bedsores were not the basis for the Commissioner's initial finding of disability in 2010, but rather were a new impairment that arose after Plaintiff's transplant surgeries in 2012. (AR 1180.) Thus, the bedsores were relevant only at the later steps of the ALJ's analysis, when the ALJ determined whether Plaintiff was still disabled despite medical improvement. *See Nathan v. Colvin*, 551 F. App'x 404, 407 (9th Cir. 2014) (citing 20 C.F.R. § 404.1594(f)(6)).

A claimant alleging disability from a severe impairment must first establish that it is a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). A claimant "can only establish an impairment if the record includes signs — the results of 'medically acceptable clinical diagnostic techniques,' such as tests — as well as symptoms, *i.e.*, [the claimant's] representations regarding [her] impairment." *Id.* at 1005.

After a claimant establishes the existence of a medically determinable impairment, the ALJ must determine whether it is "severe." *See* 20 C.F.R.

4

§ 404.1520(a)(4)(ii). An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

If an ALJ determines that a claimant has at least one severe impairment, it makes no difference whether the ALJ classifies additional impairments as severe. An ALJ's severity analysis "is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citation omitted). Instead, the question becomes whether the ALJ properly accounted for all of the claimant's limitations in assessing disability. *See id.* at 1049 (in assessing RFC, the ALJ "must consider limitations and restrictions by all of an individual's impairments, even those that are not 'severe'").

Finally, a reviewing court "may not reverse an ALJ's decision on account of a harmless error." *See id*. at 1048. An error would be harmless in this context if the limitations that the ALJ failed to include, in either the RFC or the hypothetical question to the VE, would not make a difference to the work that the claimant could perform. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an ALJ's erroneous omission of postural limitations from the RFC was harmless error where the ALJ identified jobs that would accommodate those limitations); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (rejecting challenge to an ALJ's hypothetical question omitting a limitation that "was *not relevant* in deciding whether [the claimant] could perform [his] past work") (emphasis in original).

**B.     Analysis.**

The ALJ did not include Plaintiff's bedsores in her analysis of whether Plaintiff was still disabled, apparently because the ALJ felt that Plaintiff had failed to establish bedsores as a medically determinable impairment. (AR 76.) It is

5

unnecessary to determine whether the ALJ erred.  Even assuming arguendo that the ALJ erred in failing to find that the bedsores were a medically determinable impairment, erred in failing to find that they were a severe impairment, and erred in failing to account for the limitations from the bedsores, the Court may not reverse if the errors were harmless.

The limitations that Plaintiff alleged from the bedsores made no difference to her ability to perform her past relevant work.  Plaintiff testified that the bedsores limited her to sitting for brief periods of 15 to 45 minutes at a time, after which she would need to stand up for at least 5 minutes.  (AR 89-90.)  The vocational expert testified that such limitations would not preclude Plaintiff's past relevant work as a front office manager or an administrative office manager, because those occupations, while sedentary, would accommodate a person who needed to sit and stand at will.  (AR 94-95.)

Thus, any failure by the ALJ's in evaluating Plaintiff's bedsores as part of the disability evaluation was harmless error because the limitations Plaintiff alleged from the bedsores would not have changed the ALJ's conclusion that Plaintiff could perform her past relevant work.  *See Stubbs-Danielson*, 539 F.3d at 1174; *Matthews*, 10 F.3d at 681; *Hickman v. Commissioner Social Sec. Admin.*, 399 F. App'x 300, 302 (9th Cir. 2010) (ALJ's failure to classify a reading disorder as a severe impairment was harmless error where a reading disorder would not have disqualified the claimant from the occupations the VE identified); *see also McGarrah v. Colvin*, 650 F. App'x 480, 481 (9th Cir. 2016) (ALJ's failure to include a limitation to simple tasks in a hypothetical question was harmless error where the jobs the VE identified involved simple work); *Gaston v. Commissioner of Social Sec. Admin.*, 577 F. App'x 739, 742 (9th Cir. 2014) (ALJ's failure to include a reaching limitation in a hypothetical question was harmless error where the job the VE identified did not require such an ability); *Mason v. Commissioner of Social Security*, 379 F. App'x 638, 639 (9th Cir. 2010) (ALJ's failure to include

mental limitations in the RFC was harmless error where the claimant's past work would accommodate those limitations). In sum, reversal is not warranted for this issue.

**II.     Plaintiff's Symptoms and Testimony (Issue Two).**

In Issue Two, Plaintiff contends that the ALJ did not properly assess her subjective symptom testimony. (Joint Stip. at 17-24, 29-30.)

### A.     Legal Standard.

An ALJ must make two findings in assessing a claimant's pain or symptom testimony. SSR 16-3P, 2017 WL 5180304, at *3; *Treichler*, 775 F.3d at 1102. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Beginning on March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a

claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on January 3, 2018, it is governed by SSR 16-3P. *See id*. at *13 and n.27. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

### B. Background.

At the hearing, Plaintiff testified about her condition as follows:

She remains unable to work because of pain from her bedsores. (AR 86.) The bedsores were "unstageable," meaning there was "a full tissue loss." (*Id*.) Any time she puts "any kind of pressure" on the bedsore area, "it's still really painful," even years after the surgeries. (*Id*.) To sit, she needs a special cushion, which she carries with her all the time. (*Id*.)

The best way to address her pain is to lie down, which is better than sitting with the cushion. (AR 87.) Even with the cushion, she can sit for only approximately 40 minutes. (*Id*.) Because of the transplant surgeries, she lost a lot of fat and muscle tissue. (*Id*.)

She cannot stand for a long period. (AR 88.) She periodically uses a treadmill for 45 minutes at a time, but is exhausted afterwards. (AR 88-89.)

Being seated is also a problem because of the bedsores. (AR 89.) If she had a sedentary job that involves sitting for most of the workday, she would need to stand up frequently. (*Id*.) She would need to stand up after the first 45 minutes of sitting, and later she would need to stand up more frequently, after 15 or 20 minutes

of sitting. (AR 90.) She would need to stand for at least 5 minutes before sitting down again. (*Id.*)

Another problem is fatigue. (AR 90.) If she goes to a doctor's appointment, she is too exhausted to do anything the next day. (AR 91-92.)

**C. Analysis.**

The ALJ first found that Plaintiff medically determinable impairments could have reasonably been expected to produce the alleged symptoms. (AR 22.) However, the ALJ next found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence. (*Id.*) As support, the ALJ cited three reasons. (AR 23-25.) The Court reviews each reason in turn.

**1. "significantly improved and stable."**

The ALJ found that, following her transplant surgeries, Plaintiff "has proven significantly improved and stable." (AR 23.) An ALJ may discount a claimant's testimony because of evidence her symptoms had significantly improved. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (holding that an ALJ "reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control"); *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits.") (citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)); *see also Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019) (holding that an ALJ properly rejected a claimant's testimony in a benefits termination case because of medical evidence of improvement from knee replacement surgeries).

Here, the ALJ discussed medical opinions from examining and treating physicians detailing Plaintiff's improvement following her transplant surgeries. (AR 23.) Dr. Buljubasic, an examining cardiologist, stated that Plaintiff was capable of the equivalent of light work after her transplant surgeries. (*Id.* [citing AR 698-705].) Dr. Madkan, a treating dermatologist, stated that Plaintiff's examination was benign for clinically suspicious or worrisome lesions. (AR 23 [citing AR 264-65].) Other treating physicians issued reports that the ALJ reasonably interpreted as showing a "clinically unremarkable presentation." (AR 23 [citing AR 1004, 1015, 1017, 1022].) Finally, medical providers repeatedly reported that Plaintiff was doing well. (AR 23 [citing AR 1154, 1158, 1163, 1185, 1204, 1211].)

Plaintiff contends that the record "demonstrates a different picture" showing that her bedsores were more serious than how the ALJ described them. (Joint Stip. at 19.) But the fact that Plaintiff's bedsores were a persistent problem does not mean the ALJ's findings lacked the support of substantial evidence. *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). More significantly, as discussed above, even if the bedsores were as limiting as Plaintiff alleged, it would not have changed the ALJ's conclusion that she could perform her past relevant work, because those occupations would have allowed her to sit and stand at will. Thus, based on the substantial evidence of medical improvement, the ALJ had a clear and convincing basis to discount Plaintiff's testimony that she remained disabled.

### 2. "not supported by the clinical findings."

The ALJ next found that "the persistency with which [Plaintiff] described her complaints were not supported by the clinical findings." (AR 24.) An ALJ may

10

reject a claimant's testimony for lack of support by objective medical evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ cited objective medical evidence undermining Plaintiff's allegations about her ability to walk or stand, her muscle strength, and her pressure ulcers. (AR 24.) Although Plaintiff reported an inability for prolonged walking or standing (AR 88), her gait and stance upon examination were unremarkable (AR 703). Similarly, Plaintiff's allegation of muscle wasting (AR 87) was inconsistent with objective medical evidence of normal muscle strength, normal muscle tone, and normal movement (AR 24 [citing AR 947, 961, 998]). Finally, Plaintiff allegation of restricted ability to sit because of ulcers or bedsores (AR 89-90) was inconsistent with evidence that her physicians did not assign limitations in sitting and found that her ulcers have proven healed without any suspicious areas or worrisome lesions (AR 24 [citing AR 973, 995]). Based on this substantial evidence of lack of support by objective medical evidence, the ALJ had a clear and convincing basis to discount Plaintiff's testimony that she remained disabled.

### 3. "conservative treatment."

The ALJ finally found that Plaintiff's medical providers had "recommended nothing more than conservative treatment." (AR 24.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). "Any evaluation of the

aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

Here, the ALJ noted that Plaintiff's physicians recommended "increased physical activity, a cushion, physical therapy and a TENS unit." (AR 24; *see also* AR 23 [citing AR 1017, 1018].) The treatment was for the pain Plaintiff experienced from bedsores in the coccyx area. (AR 1017.) Although Plaintiff's physicians discussed the possibility of more aggressive treatment, including referral to a spine surgeon (AR 1018), nothing in the record indicates that Plaintiff underwent any treatment for her bedsores that was more aggressive than what the ALJ noted.

The Ninth Circuit held that similar treatment, for back pain, was properly characterized as conservative. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (upholding ALJ's characterization of treatment as conservative where it included physical therapy, use of anti-inflammatory medication, a TENS unit, and a lumbosacral corset). Given this authority, the ALJ reasonably found that Plaintiff's reports regarding the disabling nature of her bedsores was undermined by the conservative nature of her treatment. And even assuming that this reason was improper, the error was harmless because the ALJ's prior two reasons were clear and convincing and supported by substantial evidence. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (ALJ's reliance on two invalid reasons to reject a claimant's testimony is harmless error where other reasons are clear and convincing).

### D. Conclusion.

The ALJ stated at least two clear and convincing reasons supported by substantial evidence for not crediting Plaintiff's subjective symptom testimony. Thus, reversal is not warranted for this issue.

///

### III. Lay Witness Statements (Issue Three).

In Issue Three, Plaintiff contends that the ALJ did not properly assess the lay witness statements of Plaintiff's parents and aunt. (Joint Stip. at 30-34, 35-36.)

#### A. Legal Standard.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)) (internal quotation marks omitted). An ALJ is "required to consider and comment upon competent lay testimony, as it concerned how [a claimant's] impairments impact his ability to work." *Bruce*, 557 F.3d at 1115. An ALJ must "provide specific, germane reasons for discounting lay witness testimony". *See Taylor v. Comm'r of Social Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).

#### B. Analysis.

Plaintiff's parents and aunt submitted written statements describing Plaintiff's limitations because of her bedsores. (AR 285-87.) In pertinent part, they wrote that Plaintiff is unable to stand or sit comfortably (AR 285); that she suffers from depression and malaise (*id.*); that she does not get out of bed (*id.*); that she needs a "heavy, large wheelchair type cushion" for her bedsores (AR 286); that her hygiene is poor (*id.*); and that she avoids people because of fear of infection (AR 287).

The ALJ rejected the lay witnesses' statements for three reasons. (AR 25.) The ALJ's first reason was that Plaintiff's family members were "not medically trained to make exacting observations" about Plaintiff's symptoms. (*Id.*) This reason was not germane to the lay witnesses. *See Bruce*, 557 F.3d at 1116 ("A lay person . . . though not a vocational or medical expert, was not disqualified from

rendering an opinion as to how [the claimant's] condition affects his ability to perform basic work activities.") (citation omitted).

The ALJ's second reason was that Plaintiff's family members "cannot be considered disinterested third party witnesses whose statements would not tend to be colored by affection" for Plaintiff. (*Id.*) Arguably, this reason also was not germane to the lay witnesses. *Compare Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("[The lay witness's] close relationship with [the claimant] is not a germane reason to discount the weight of his observations."); *and Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (a lay person's status as an "interested party" was not a germane reason "in the abstract" without concrete evidence of bias); *with Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ gave a germane reason for doubting a lay witness who had a "close relationship" with the claimant and who "was possibly influenced by her desire to help him") (internal quotation marks and alteration omitted). However, it is unnecessary to resolve the question of whether this reason was germane to the lay witnesses. Even assuming that this reason did not suffice, the next reason did.

The ALJ's third reason was that "[m]ost importantly, significant weight cannot be given to these statements because they, like [Plaintiff's] allegations, [are] simply not consistent with the medical evidence of the record." (AR 25.) The ALJ cited, as discussed above, objective medical evidence that undermined Plaintiff's allegations regarding the intensity of her symptoms. This was a germane reason not to credit the lay witnesses' statements. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with the medical evidence" was a germane reason for rejecting lay testimony); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence."). Although Plaintiff points out that the lay witnesses were competent to give statements describing Plaintiff's symptoms (Joint Stip. at 33), the ALJ was entitled to reject those alleged symptoms as inconsistent with

objective medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (holding that an ALJ properly rejected lay testimony about a claimant's symptoms from pet mal seizures because of "conflicts with the medical evidence" regarding such alleged symptoms); *see also Burkett v. Saul*, _ F. App'x _, 2020 WL 1079328, at *2 (9th Cir. 2020) (upholding an ALJ's reasoning to discount lay testimony "given that the degree to which she reported that the claimant is limited is somewhat inconsistent with the above-described record as a whole").

In sum, the ALJ stated at least one reason for discounting the lay witnesses' statements that were germane to them. To the extent that the ALJ stated one or two other reasons that were not legally sufficient, it was harmless error. *See Valentine*, 574 F.3d at 694 (ALJ's improper reasons for rejecting the lay testimony of a claimant's wife were harmless error where the ALJ otherwise gave germane reasons for rejecting her testimony). Thus, reversal is not warranted for this issue.

## ORDER

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: May 20, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE